# THE CITY OF EAST ST. LOUIS

*v.*

# FRANK B. MAXWELL.

*Filed at Mt. Vernon June 21, 1881.*

1. MUNICIPAL CORPORATION—*power to re-fund indebtedness.* Where a city council is, by its charter, empowered to borrow money on the credit of the city, not exceeding $100,000, and issue its bonds therefor, followed by a clause that "with the money so borrowed the city council shall first liquidate and discharge all legal indebtedness of the city," this will authorize the city to take up its floating indebtedness, and the bonds given for the money borrowed, if issued in conformity to the charter in other respects, will be valid and binding.

2. SAME—*special power to issue bonds not modified by act of 1872.* Where a city, under its charter, is authorized to borrow money to liquidate its indebtedness, etc., and to issue bonds for the money so borrowed, without any vote of the people, its power in this respect will not be modified or changed by the general law of 1872, authorizing counties and cities to take up and cancel outstanding bonds and fund the same, but which provides that the new bonds shall be issued only upon a vote of the people of the municipality. The object of the act of 1872 was to provide a remedy for re-funding. corporate indebtedness where the power did not already exist.

3. STATUTE—*repeal by implication.* The repeal of an existing law by implication is not favored. The repugnance between statutes must be so clear and plain that they can not be reconciled, to justify a resort to the doctrine of a repeal by implication.

4. A general statute does not, by implication, repeal charters and special acts passed for the benefit of particular municipalities.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. CHARLES W. THOMAS, for the appellant:

The bonds in question were not issued for money borrowed, nor for labor, services, or material furnished, but were issued directly to creditors to take up and cancel some former indebtedness held by them. Where the vote of the people is

required by any statute as a prerequisite to the issuing of municipal bonds, such vote is one of the elements of power, and if it is lacking, the power fails, and the bonds are void. *Williams* v. *Town of Roberts*, 88 Ill. 11, and cases there cited.

The act of 1872 authorized the funding of the indebtedness of any county, city, etc., provided the issue of the new bonds should be authorized by a majority vote of the legal voters of such municipality.

It is claimed that section 4, article 3, of the charter of the city, empowers the council to issue these bonds; but the power conferred by this section has no reference to re-funding the city debt. It relates solely to the creation of such a debt. The making of a debt is one thing, and the funding of it is quite another and different thing. But even had the charter contained a power to fund the debt without a vote, the law of 1872 modified that power so that a vote was necessary.

The court, in the case of *Galena* v. *Corwith*, 48 Ill. 423, in speaking of the powers, by implication, of cities to borrow money and fund indebtedness, said that a city could fund an existing debt without any express power being given it to do so.

In *Hardin County* v. *McFarlan*, 82 Ill. 188, the force of the above case is very much broken. It is there said, that "the decision in that case was based upon the ground that the city, by its charter, had power to borrow money, and not having been restricted as to the means of exercising that power, could issue the bonds."

Mr. F. A. McCONAUGHY, for the appellee:

It is confidently asserted by the opposing counsel that the law of 1872 modified the power given in the charter, so that a vote was necessary. There is not a word in this act directed to such a purpose, or to the repeal of any prior legislation. The repeal of a law by implication is not favored. The repugnance between statutes must be so clear and plain that they can not be reconciled, to justify a resort to this

doctrine. *Bruce* v. *Schuyler,* 4 Gilm. 221; *Hume et al.* v. *Gossett,* 43 Ill. 299.

Judge Dillon, in his work on Municipal Corporations, sec. 54, says: "It is a principle of very extensive operation, that statutes of a general nature do not repeal, by implication, charters and special acts passed for the benefit of particular municipalities,—citing *Bond* v. *Hiestand,* 20 La. Ann. 139; *Railroad Company* v. *Alexandria,* 18 Gratt. (Va.) 176; *Hammond* v. *Haines,* 25 Md. 541; *Louisville* v. *McKean,* 18 B. Mon. 9; *Cumberland* v. *Magruder,* 34 Md. 381; *Egypt Street,* 2 Grant cases, (Pa.) 455; *State* v. *Branin,* 3 Zabr. (N. J.) 484. See, also, *Town of Ottawa* v. *County of La Salle,* 12 Ill. 340.

The act of 1872, and the act amendatory thereto, passed in 1875, were intended only to provide a remedy which did not before exist to renew or fund outstanding indebtedness, so that cities which had power to contract indebtedness, and no power to fund or re-fund the same, might avail themselves of these acts. *The People ex rel.* v. *Lippincott,* 81 Ill. 193; *County of Hardin* v. *McFarlan,* 82 id. 138; *Burr* v. *City of Carbondale,* 76 id. 474.

The charter of the city says: "With the moneys so borrowed, the city council shall first liquidate and discharge all legal indebtedness of the said city." Under this power both the ordinances were adopted.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was an action, brought in the circuit court of St. Clair county, against the city of East St. Louis, on five bonds, of $500 each, issued by the city, payable five years after their date, with interest at ten per cent. One of the bonds was dated March 8, 1872, and was issued under an ordinance of the city approved July 8, 1869. The other four bore date ———— —, ———, and were issued under an ordinance approved June 6, 1872.

It is contended by the city, that at the time the bonds were issued there was no law which authorized their issue, and hence the bonds are void, and no action can be maintained upon them. If the bonds were issued without legal authority, they can not be enforced. We will, therefore, go to the law under which the ordinances were adopted, under which the bonds issued, to determine the validity of the bonds.

The charter of the city of East St. Louis, art. 3, sec. 4, Private Laws, 1869, vol. 1, p. 885, provides: "The city council shall have power to appropriate money and provide for the payment of the debt and expenses of the city; to borrow, on the credit of the city, a sum of money not exceeding one hundred thousand dollars ($100,000); to issue bonds, scrip, or certificates of indebtedness therefor, in such amounts, and bearing such interest, and payable at such times and places, and in such manner, as the city council may deem will make such bonds, scrip or certificates most valuable and salable, and best for the interests of the city; but no bond, scrip or certificate shall exceed in amount one thousand dollars ($1000), nor bear a greater interest than ten per cent per annum. *With the moneys so borrowed, the city council shall first liquidate and discharge all legal indebtedness of the said city,* and the balance, if any, of the amounts so borrowed, shall be equitably expended by the council in general improvements, that shall be for the general benefit of the city."

It is insisted by the city, that the power conferred by this section has no reference to re-funding the city debt—that it relates solely to the creation of such a debt. It is true, the provision of the charter cited *supra* does not, in express terms, say that the bonds authorized to be issued are for re-funding an existing indebtedness, but it is apparent, from the language used, such is the meaning of the words used in the charter. The charter declares that the city council shall have power * * * to borrow, on the credit of the city, not exceeding $100,000, and issue bonds therefor. Then follows this

provision: " With the money so borrowed the city coun-
cil shall first liquidate and discharge all legal indebtedness
of the city." This clause of the charter was doubtless
enacted by the legislature to enable the city to take up a
floating indebtedness, which was probably due to various per-
sons and in various amounts, and to issue in lieu thereof its
bonds, payable at a future day, at a specified rate of interest;
and whether the provision in the charter might strictly be
called a re-funding act or not, is a matter of no consequence.
It is sufficient, for the purposes of this transaction at least, that
the city had the power to borrow money, and issue its bonds
for the purpose of raising money to liquidate this then exist-
ing indebtedness of the city,—that the bonds in question were
issued under the charter for the purposes named therein.

But it is, however, said, if the charter contained an
express power to fund the debt without a vote, the act of
1872 modified that power so that a vote was necessary to give
the funding bonds subsequently issued any validity. By the
terms of the act itself, bonds issued under the act of 1872 are
not valid unless authorized by a vote of the people of the
town or municipality which issued them. Laws 1872, p. 202.
But unless that act changed or repealed the provision of the
charter of the city of East St. Louis which authorized the issue
of the bonds, the act has no bearing whatever on the question
involved. If the charter is repealed by the act of 1872, the
repeal is by implication, as the act does not profess to repeal
the charter or any other prior act of the legislature. The
repeal of an existing law, by implication, is not favored, and
it is a familiar rule, in the construction of statutes, that the
repugnance between statutes must be so clear and plain that
they can not be reconciled, to justify a resort to this doctrine.
*Bruce* v. *Schuyler,* 4 Gilm. 221; *Hume* v. *Gossett,* 43 Ill. 297.

There is no such repugnance between the two acts as
would justify a court in holding that one repeals the other.
The charter authorizes the city to borrow money and issue
its bonds to raise funds to pay off the indebtedness of the city,

while the act of 1872, without in any manner interfering with the charter of the city or the power conferred, on the city council, authorizes counties, cities, school districts and other municipal corporations to take up and cancel outstanding bonds and other evidences of indebtedness, and fund the same; but such new bonds shall only be issued on a vote of the people of the municipality to be affected.    This act was before us for construction in *The People* v. *Lippincott*, 81 Ill. 193, and it was there said: "The emergency clause, which we may consider expresses the immediate object of the legislature in the passage of the act of 1872, declares: 'Whereas, some counties, cities, townships and other municipal corporations in this State have outstanding bonds and other evidences of indebtedness that will soon fall due, and are without any remedy for renewing or funding the same: therefore this act shall be in full force from and after its passage,' indicating the purpose only to provide a remedy, which did not before exist, to renew or fund outstanding indebtedness."

The act of 1872 is a statute of a general nature, and such statutes do not repeal, by implication, charters and special acts passed for the benefit of particular municipalities.    Dillon on Municipal Corporations, sec. 54.

*Town of Ottawa* v. *County of La Salle*, 12 Ill. 340, is an authority in point on the question involved.    It was there held, that a subsequent law which is general, does not abrogate a former one which is special; nor does a general law operate as a repeal of a special law on the same subject, passed at the same session.

We do not, under the authorities bearing on the question, have any hesitation in holding that the charter of the city was in no manner affected by the passage of the act of 1872.

The judgment will be affirmed.

*Judgment affirmed.*